In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00222-CV
_____


IN THE INTEREST OF K.S., K.S. AND G.S.

════════════════════════════════════════════════════

**On Appeal from the County Court at Law
Polk County, Texas
Trial Cause No. PC05776**

════════════════════════════════════════════════════

**MEMORANDUM OPINION**

The trial court terminated the parental rights of G.S. (Father) and T.R.J. (Mother) to their children K.S., K.S., and G.S.[1] In separate briefs submitted in this appeal, Mother and Father challenge the legal and factual sufficiency of the evidence supporting the jury's verdict. We affirm the trial court's judgment.

---

[1]We identify the minors by their initials to protect their identities. *See* Tex. R. App. P. 9.8. Other family members are identified, as necessary, based on their respective relationships to the specific child who is being discussed.

1

Background

K.S. and K.S. are twins born in September 2010 and G.S. was born in February 2013. In May 2011, the Department obtained a removal order for the twins. In January 2013, the trial court signed an agreed order appointing the children's paternal grandfather, B.S. (Grandfather), as permanent managing conservator of the twins and dismissing the Department from the case. On June 5, 2013, the twins were left unattended outside a bank in the course of an argument between Mother and the children's maternal grandmother, J.K. (Grandmother). A few weeks later, when the women were arrested and taken into custody in connection with the incident at the bank, Grandfather turned over possession of the three children to the Department. The trial court named the Department as the children's temporary managing conservator on June 25, 2013, then consolidated the earlier suit concerning the twins with the new suit concerning all three children.

The disputed issues were submitted to a jury, which found by clear and convincing evidence that Mother's and Father's parental rights to each child should be terminated. The trial court found that Mother (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct

2

which endangers the physical or emotional well-being of the children, (3) had her parent-child relationship terminated with respect to another child based on a finding of endangering conduct or conditions, and (4) that termination of the parent-child relationship between Mother and the children is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (M), (2) (West 2014). The trial court found that Father (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, (2) failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, and (3) that termination of the parent-child relationship between Father and the children is in the children's best interest. *See id.* § 161.001(1)(E), (O), (2).

## Standard of Review

"The decision to terminate parental rights must be supported by clear and convincing evidence." *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Clear and convincing evidence is "the measure or degree of proof that will produce in the

mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014). A judgment will be affirmed if a parent committed one or more predicate acts or omissions and termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also J.L.*, 163 S.W.3d at 84.

In reviewing the evidence for legal sufficiency, we consider all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.L.*, 163 S.W.3d at 84–85. We assume the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and "'disregard all evidence that a reasonable factfinder could have disbelieved[.]'" *Id.* at 85 (quoting *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

When we review a termination of parental rights for factual sufficiency, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266; *see also In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *J.F.C.*, 96 S.W.3d at 266. The evidence is factually

insufficient if the disputed evidence that does not reasonably support the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction that the fact at issue was true. *Id.*

We must uphold the judgment against a challenge to the sufficiency of the evidence if the evidence is legally and factually sufficient on the best interest finding and any one of the statutory grounds for termination identified in the judgment. *See In the Interest of E.I.T.*, 299 S.W.3d 919, 923 (Tex. App.—Beaumont 2009, no pet.).

Grounds for Termination-Mother

Mother contends insufficient evidence supports a finding that she "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(1)(E). "Under subsection (E), the relevant inquiry would be whether clear and convincing evidence exists that the endangerment of the children's physical or emotional well-being was the direct result of that parent's conduct, including acts, omissions, or failures to act." *In the Interest of J.B.*, No. 09-11-00305-CV, 2012 WL 2849267, at *2 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.). Endangerment "means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment[]" but "it is

5

not necessary that the conduct be directed at the child or that the child actually suffers injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Mother testified that she drove Grandmother and the children in Grandmother's car on errands that included taking the twins to therapy and visiting a bank. Mother stated that she was annoyed with Grandmother because "she had me going all over the place." When Mother complained that she had appointments herself and she was ready to go, Grandmother ordered Mother to get out of her car. Mother removed the children from the car and brought them into the bank, still in their car seats, and set them down, then left the bank in Grandmother's vehicle. Mother explained that she was upset because Grandmother would not lend her a cell phone so Mother could call someone else to come get her. Grandmother carried the children out of the bank and left them in their car seats alone outside the door to the bank. Grandmother and Mother eventually returned to the children and the bank's vice-president informed the women that the police had been called. Still angry, Mother hit one of the children, tossed the car-seated children into the car without securing them, drove into the parking area in reverse with the doors open, then stopped suddenly. The abrupt movement caused the car doors to close and Mother drove away before the police arrived.

6

Mother admitted that Grandmother had a substance abuse problem and in the past had been charged with driving while intoxicated with one of Mother's children in the vehicle. Mother was aware that the Department had emphasized that Grandmother should never be left alone with the children, but Mother stated that in her opinion she did not leave the children with Grandmother unsupervised because they were in a public place. Mother testified that she would not have left the children alone with Grandmother any other place.

On appeal, Mother concedes the Department established that she left the twins at the bank with Grandmother "whom all agreed was an inappropriate caregiver" but argues evidence of a single act or omission cannot support an endangerment finding under subsection E. Mother also argues the jury could not find that she endangered G.S. because that child was not with them at the bank. A single act or omission that directly affects a child can justify an endangerment finding. *See In the Interest of D.A.*, 02-14-00076-CV, 2014 WL 3778234, at *22 (Tex. App.—Fort Worth July 31, 2014, no pet. h.) (mem. op.). A parent's conduct directed toward one child can support termination of parental rights as to another child even though it did not occur in the child's presence. *In the Interest of B.B.*, 971 S.W.2d 160, 169 (Tex. App.—Beaumont 1998, pet. denied), *disapproved on other grounds by In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In this

7

case, the jury reasonably could conclude that Mother not only left her children with a person she knew to be an inappropriate caregiver, she left them without first securing Grandmother's consent to supervise the children or ensuring that a responsible person would be watching the children in her absence. The jury could also determine that when she did return, Mother further endangered the children by failing to secure their car seats and by driving recklessly to avoid being confronted by the police. The jury could form a firm belief or conviction as to the truth of the Department's allegation that Mother endangered her children. *J.L.*, 163 S.W.3d at 84.

Mother also argues that the evidence is factually insufficient to support the statutory predicate grounds for termination, but she did not challenge the factual sufficiency of those findings in her motion for new trial. A motion for new trial is required to preserve a complaint of factual insufficiency to support a jury finding. *In the Interest of M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Mother does not argue that trial counsel unjustifiably failed to preserve error. *See In the Interest of J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005); *M.S.*, 115 S.W.3d at 548. Counsel is not automatically ineffective for failing to preserve a factual sufficiency claim. *In the Interest of C.T.*, No. 09-11-00694-CV, 2012 WL 1072260, at *1 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.).

We overrule issue three of Mother's brief. Because only one predicate finding is necessary to support a judgment, we do not address issues one and two of Mother's brief, which challenge the Department's other alleged grounds for termination of the parent-child relationship between Mother and the three children. *See In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see also* Tex. R. App. P. 47.1.

## Grounds for Termination-Father

In his second issue, Father contends the evidence is legally and factually insufficient to support an affirmative finding that he

> failed to comply with the requirements of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*See* Tex. Fam. Code Ann. § 161.001(1)(O). Father argues the Department failed to prove that the children were removed from Father for Father's abuse or neglect of the children. He also argues the Department failed to comply with the Chapter 263 requirements for preparing and filing a service plan.

The twins were removed from Father's custody in 2011 for neglectful supervision and the Department assumed temporary managing conservatorship.

The children were removed because Father was arrested for assaulting Grandmother and Grandmother was arrested for driving while intoxicated with a child in the vehicle. The Department offered family based safety services. The children were returned to Mother and Father in a monitored return around April 2012. The return failed, and the Department removed the children and returned them to foster care. At the conclusion of that proceeding Grandfather became their permanent managing conservator.

In June 2013, the incident at the bank resulted in a referral involving the twins and G.S. The Department's petition and the trial court's order were admitted in the trial as evidence. In the order, the trial court found "there is an immediate danger to the physical health and safety of the children or the children have been the victims of neglect or sexual abuse and that continuation in the home would be contrary to the children's welfare[.]" Although Grandfather was the managing conservator, Mother testified that at that time Mother and Father were also residing with the children in Grandfather's household. According to Father, Grandfather had turned the children over to them and they were raising the children at Grandmother's most of the time.

The trial court appointed the Department as the children's temporary managing conservator on July 9, 2013. At that time the Department alleged that

there is an immediate danger to the physical health or safety of the children. The trial court denied the Department's motion to proceed under aggravated circumstances on September 4, 2013, and ordered the Department to file Father's service plan, which was filed on September 17, 2013. The trial began April 21, 2014. In his trial testimony, Father admitted that after the most recent removal he did not work on completing the service plan because he was depressed.

Father contends he could not be required to complete a service plan because the children were removed from Grandfather's custody, not Father's. This argument is presented for the first time on appeal. At trial, Father moved for directed verdict on the subsection O finding on the ground that "the Service Plan was filed in September of 2013[,] and we're in April of 2014, and he has not had nine months to work a Service Plan, and has absolutely not been given an opportunity to do that in the six months or so that it's been." Father does not argue that trial counsel unjustifiably failed to preserve error. *See J.P.B.*, 180 S.W.3d at 574; *M.S.*, 115 S.W.3d at 548.

Subsection O may operate as a ground for termination when a parent from whom children are not physically removed fails to comply with court-ordered services. *See In the Interest of A.M.C.*, No. 09-12-00314-CV, 2012 WL 6061031, at *6 (Tex. App.—Beaumont Dec. 6, 2012, no pet.) (mem. op.). The trial court's

11

order of protection was admitted into evidence and shows the trial court found that the children were removed due to neglect. *See* Tex. Fam. Code Ann. § 262.102 (West 2014).

Father argues his rights cannot be terminated for failing to comply with a service plan that was not filed within forty-five days of its appointment as temporary managing conservator. *See id.* § 263.101. He also challenges the Department's reliance on subsection O as a termination finding because the status hearing was not held within sixty days of the appointment. *See id.* § 263.201 These arguments are raised for the first time in this appeal. In the proceedings before the trial court, Father argued that his failure to comply with the family service plan could not support a termination finding under subsection O because the Department filed the plan less than nine months before the trial. He did not argue that the plan was invalid because it was not filed within forty-five days after the trial court named the Department as the children's temporary managing conservator or because the status hearing was delayed because the Department filed a motion to proceed under aggravated circumstances.

The trial court's failure to conduct a timely status hearing does not deprive the court of jurisdiction and a due process complaint relating to a delayed hearing must be presented to the trial court to preserve the issue for appeal. *In the Interest*

*of T.T.F.*, 331 S.W.3d 461, 478 (Tex. App.—Fort Worth 2010, no pet.). The children were in the Department's custody for nine months, as required by subsection O. *See* Tex. Fam. Code Ann. § 161.001(1)(O). Father concedes that he did not seek enforcement of the statutory timetable, but argues he was harmed because he did not receive nine months to work on completing the plan. *See In the Interest of J.G.K.*, No. 02-10-00188-CV, 2011 WL 2518800, at *33 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op.). A caseworker for the Department testified that Father submitted to a hair follicle test in December 2013, but at the end of the month Father told her not to schedule caseworker services because "the kids were going to be taken." The caseworker visited Father the following month and recommended counselors, but Father declined services. The caseworker indicated that, other than submitting to the hair follicle test and visiting the children, Father did not work on the service plan at all in the seven months between the time the Department filed the service plan and the trial. The jury could form a firm conviction or belief that Father failed to comply with a court order that established the actions necessary for Father to obtain the return of the children to him. *See* Tex. Fam. Code Ann. § 161.001(1)(O). We conclude the evidence is legally sufficient to support the finding.

Father contends the evidence is factually insufficient to support the statutory predicate grounds for termination, but his motion for new trial challenged only the best interest finding. Father does not argue that trial counsel unjustifiably failed to preserve error. *See J.P.B.*, 180 S.W.3d at 574; *M.S.*, 115 S.W.3d at 548. As stated earlier, counsel is not automatically ineffective for failing to preserve a factual sufficiency claim. *C.T.*, 2012 WL 1072260, at *1.

We overrule issue two of Father's brief. Because only one predicate finding is necessary to support a judgment, we do not address issue one of Father's brief, which challenges the other ground for termination in the judgment. *See In the Interest of A.V.*, 113 S.W.3d at 362; *see also* Tex. R. App. P. 47.1.

Best Interest

In their motions for new trial, both Mother and Father moved for a new trial on the ground that the evidence supporting the jury's finding that termination is in the children's best interest is legally and factually insufficient. Mother's issue four and Father's issue three challenge the legal and factual sufficiency of the evidence supporting the best interest finding. Regarding the children's best interest, we consider a non-exhaustive list of factors: (1) desires of the children; (2) emotional and physical needs of the children now and in the future; (3) emotional and physical danger to the children now and in the future; (4) parental abilities of the

14

individuals seeking custody; (5) programs available to assist the individuals to promote the best interest of the children; (6) plans for the children by the persons or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parents which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parents. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code. Ann. § 263.307(b) (West 2014).

The Department's witness testified that Mother and Father have a bond with their children. Someone other than Mother and Father has had conservatorship of the children for most of their lives. The twins have a neurological condition that requires specialized equipment, physical therapy, and speech therapy. Mother testified that she understood her children's needs. Although she was living in Goodrich at the time, they had to move out of Grandfather's home so she met with the San Jacinto County or the Coldspring School District about getting the children transferred there and fitted for wheelchairs when they turned three. Father testified that Mother took care of the children when they lived together.

While Mother was pregnant with the twins, her rights were terminated as to one of her other children. Mother did not work on completing a service plan for that case because she was abusing prescription medications and was in hiding to

15

avoid drug charges for which she was eventually imprisoned. Mother testified that she stopped using drugs when she was pregnant with the twins and that she had been drug free since 2010. At the time of trial Mother did not have a home, a job, or any means of support. She admitted she would not be able to take care of the children at this point in her life, but stated she believed Father could provide for all of their needs and it would be in the children's best interest for the children to be placed with Father.

Father threatened suicide during the case. One month before the trial he was arrested for assaulting Mother and his brother. After Mother left him (approximately one month prior to trial) Father began to seek therapy for his emotions. Father also discontinued his medication regimen for depression and bi-polar disorder, relying instead on heavy doses of pain medications. By his own admission Father's psychological problems impeded his ability to function. Father was unemployed at the time of trial but testified he would be willing to assist Mother financially if the children were returned to her. Father was living in a trailer that his mother purchased for him and placed on his grandmother's property; he added sheet rock and a roof a few days before the trial and stated that with a little more work the trailer would be suitable for visitation with the children. Father

asked for the children to be returned to him and for the Department to be dismissed from the case.

In June 2013, the Department placed the children with a foster mother who is a board certified pediatrician who treats children with special needs in her practice. Her husband is an art teacher for the school district. When the children arrived in the foster care home, four-month-old G.S. was on target developmentally but the twins were nonverbal and too weak to walk or climb. At least once a week they received speech therapy, occupational therapy, and physical therapy. When the twins reached the age that required them to leave the program Early Childhood Intervention, the foster mother enrolled them in home health services, ensuring their continuous care. The twins attend an early childhood education center and the youngest child is in daycare. The twins are being treated for amblyopia. They have walkers and specialized tricycles. The foster mother and her husband would pursue adoption if the children were available.

On the entire record, the jury could reasonably conclude that neither Mother nor Father could provide a safe environment for the children. The evidence that does not support the jury's finding includes evidence that Mother had taken care of the children in the past and Father had been preparing a place where the children could stay with him, but the evidence is not so significant that the jury could not

17

have reasonably formed a firm belief or conclusion that terminating the parent-child relationship is in the children's best interest. We overrule Mother's issue four and Father's issue three. The trial court's judgment is affirmed.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 11, 2014
Opinion Delivered September 25, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.